AO 451 (Rev. 12/12)   Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Missouri  ▼

| | |
|---|---|
| MISSOURI PRIMATE FOUNDATION, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 4:16-cv-2163-CDP |
| PEOPLE FOR THE ETHICAL TREATMENT OF | ) |
| *Defendant* | ) |

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)* **3/27/2023** .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: **4/29/2024**

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATHAN M. GRAVES, CLERK
A TRUE COPY OF THE ORIGINAL
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
BY

MISSOURI PRIMATE FOUNDATION, )
et al., )
 )
 )
              Plaintiffs and )
              Counterclaim Defendants, )
 )
v. )          Case No. 4:16 CV 2163 CDP
 )
PEOPLE FOR THE ETHICAL )
TREATMENT OF ANIMALS, INC., et )
al., )
 )
              Defendants and )
              Counterclaim Plaintiffs. )
 )

**MEMORANDUM AND ORDER**

This matter is before the Court on two motions for attorneys' fees and costs

from Counterclaim Plaintiffs Angela Scott and People for the Ethical Treatment of

Animals, hereinafter "Plaintiffs." The events leading to these motions are well-

known by the parties, and I will not dwell on them in detail here.

In short, the Court entered a Consent Decree imposing obligations on

Haddix and Plaintiffs in connection with seven chimpanzees under Haddix's care:

Haddix was to care for the chimpanzees in accordance with certain conditions until

four of them could be transferred, PETA was to transfer the four chimpanzees to a

suitable sanctuary. Haddix never fulfilled her obligations, and on two occasions I

found her in civil contempt. (ECF 299, 307.)   Haddix's noncompliance required

Plaintiffs to undertake enormous effort to effectuate the Court's orders, including

filing several motions for orders to show cause why Haddix should not be held in

civil contempt (ECF 287, 289, 308, 333), filing two motions for temporary

restraining orders (ECF 289, 367), requesting a detailed transfer order (ECF 310,

311), participating in several hearings (ECF 294, 298, 320, 361), defending the

Court's orders on appeal (*See* ECF 327), and attending the chimpanzees' transfers

(*See* ECF 332, 374).

Much of Plaintiffs' effort was devoted to locating one of the chimpanzees,

Tonka.  Shortly after I ordered that all seven chimpanzees be transferred to the

Center for Great Apes in my Second Order of Civil Contempt, Haddix claimed that

Tonka died.  When Plaintiffs notified the Court of Haddix's apparent attempt to

flout my order, I held a hearing on Tonka's whereabouts[1] and ordered Haddix to

provide proof of Tonka's death, which she never did.  Thus, Tonka did not

accompany the other six chimpanzees to the Center for Great Apes when they were

transferred on July 28, 2021.

After the July 28 transfer, the Court held a hearing on Plaintiffs' motion to

hold Haddix in contempt for her failure to provide evidence of Tonka's death.

---

[1] This hearing also addressed Plaintiffs' motion for a detailed transfer order. (*See* ECF 320, 324.)

There, Haddix recounted her discovery of Tonka's body and her husband's cremation of Tonka at a property in Peculiar, Missouri, and PETA provided evidence and expert testimony contradicting Haddix's tale.  At the conclusion of the hearing, I agreed that there were many inconsistencies in Haddix's testimony, and she appeared to be making up answers to questions under oath.  However, I declined to enter an additional order finding Haddix in civil contempt because Plaintiffs did not provide enough evidence that Tonka was still alive.

On June 1, 2022, PETA provided that evidence in the form of an audio recording in which Haddix asserted that Tonka was still alive and that she was going to euthanize him on June 2, 2022.  PETA moved for a temporary restraining order preventing Haddix from euthanizing Tonka and allowing a veterinarian to evaluate whether he was healthy enough to travel.  I granted the motion.  Tonka was indeed alive, in Haddix's basement, and healthy enough to travel.  Because the Center for Great Apes lacked capacity for Tonka at that time, he was transferred to the Save the Chimps Sanctuary on June 6, 2022.  (*See* ECF 374.)

Plaintiffs now attempt to recoup their costs from their attempts to secure Haddix's compliance with the Consent Decree and my civil contempt orders.  In their "Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with the Consent Decree," Plaintiffs seek to recover $155,269.50 in attorneys' fees and $8,341.53 in expenses.  (ECF 365.)  Plaintiffs filed their motion before they

- 3 -

discovered that Haddix was hiding Tonka in her basement.  So, in their "Motion to Supplement Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with the Consent Decree" they seek an additional $24,535.50 in attorneys' fees and $40,721.37 in costs.  (ECF 379.)  In total, they request an award of $228,867.90— $179,805.00 in attorneys' fees, and $49,062.90 in expenses.

## Discussion

The purpose of a civil contempt order is twofold: first, to coerce compliance with the Court's orders, and second, to compensate the complainant for losses caused by the contemnor's noncompliance.  *See Chicago Truck Drivers v. Bhd. Lab. Leasing,* 207 F.3d 500, 505 (8th Cir. 2000) (citing *United States v. United Mine Workers,* 330 U.S. 258, 290, 303-04 (1947)); *Hartman v. Lyng,* 884 F.2d 1103, 1106 (8th Cir. 1989) ("A compensatory sanction . . . serves to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed.").  Compensatory civil contempt sanctions may properly include attorney's fees and expenses.  *See Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 630 (8th Cir. 1984).  Thus, in my previous orders I instructed Haddix to pay "PETA's reasonable costs and attorney's fees associated with their efforts to obtain compliance with the Consent Decree" and filing their civil contempt motions.  (ECF 309 at p. 2; *see also* ECF 299 at p. 5.)  After thoroughly scrutinizing Plaintiffs' motions, time entries, and expense reports, I find

- 4 -

that Plaintiffs are entitled to $175,341.34 in attorneys' fees, and $49,062.90 in expenses, for a total award of $224,404.24.

## A. Attorneys' Fees

To calculate a reasonable fee, I employ the "lodestar method" where the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014). Once I determine that amount, I consider a number of other factors to determine whether the fee should be adjusted upward or downward.[2] *Hensley*, 461 U.S. at 434; *see also City of Riverside v. Rivera*, 477 U.S. 561, 568 n.3 (1986).

### 1. Reasonable Hours

In Plaintiffs' original motion for attorneys' fees and costs, they document 316 hours of legal work performed by three attorneys: Jared Goodman, James P. Martin, and Ben L. Cohen. Plaintiffs provide billing records supporting most of those hours, but a few of the time entries for legal work performed by Martin and

---

[2] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases). *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

Cohen are redacted.[3]  "[T]he fee applicant bears the burden of establishing

entitlement to an award and documenting the appropriate hours expended and

hourly rates," *Hensley*, 461 U.S. at 437, and "incomplete or imprecise billing

records prevent the Court from exercising meaningful review," *Richemont Int'l,*

*S.A. v. Clarkson*, No. CIV.07-1641 JRT/FLN, 2008 WL 4186254, at *1 (D. Minn.

Sept. 5, 2008) (citing *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991)).

For that reason, I will exclude these hours from the lodestar calculation.  Excluding

billed time for which there is no description, Plaintiffs have provided

documentation showing that they performed 309.2 hours of legal work in their first

motion.

In Plaintiffs' supplemental motion for attorneys' fees and costs, they request

an award for 52.9 hours of legal work performed by Mr. Goodman[4] and Mr.

Martin.  Again, some of these hours were redacted, and I will exclude them from

the lodestar calculation.  Excluding these hours, Plaintiffs provide sufficient

evidence documenting 50.3 hours of legal work in their supplemental motion.

---

[3] In two sworn affidavits, Mr. Goodman claims that these time entries were redacted to protect attorney-client and work product privilege or because they were unrelated to Haddix. (ECF 366-1 at p. 2; ECF 379-1 at p. 3.)

[4] Mr. Goodman appears to undercalculate the hours of legal work he documented in his billing records. (*See* ECF 379-1.)  He documents 38.1 hours of relevant legal work, but only claims 37.8 hours.  I have excluded this 0.3 hour from the lodestar calculation.

Haddix argues two general categories of these hours were not reasonable. First, she argues that I should not award fees for Plaintiffs' legal work opposing her appeal of my transfer order because she claims that was a separate proceeding. Second, she argues that she should not have to pay for Mr. Goodman's travel time to oversee the chimpanzees' transfers.

Haddix's first argument is unavailing. Haddix sought an emergency stay of my transfer order (ECF 323, 327),[5] an order which was necessitated by her ongoing recalcitrance. Opposing this motion was necessary to ensure the chimpanzees were transferred, and thus compel Haddix's compliance with the Consent Decree. I am persuaded by the cases cited by Plaintiffs awarding attorneys' fees and expenses incurred in litigating contempt proceedings, regardless of the court in which the expenses were incurred. *See Schauffler v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. Of U.S. & Canada, Loc. 420, AFL*, 246 F.2d 867, 870 (3d Cir. 1957); *Weitzman v. Stein*, 98 F.3d 717 (2d Cir. 1996) (directing district court to grant appellate fees and costs). I will therefore decline to exclude these hours from the lodestar calculation.

---

[5] The Eighth Circuit denied Haddix's motion. (*See* ECF 331).

Haddix's second argument also fails. It is well-settled that a "reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time." *Safelite Group, Inc. v. Rothman*, 759 Fed.Appx. 533, 536 (8th Cir. 2019). Haddix primarily challenges the reasonability of Mr. Goodman's billed time travelling to oversee the chimpanzees' transfers: she claims that Mr. Goodman's attendance was unrelated to the practice of law. But counsel's attendance was within the scope of his representation of Plaintiffs and was necessitated by Haddix's clear intent to frustrate the Court's orders. Although monitoring the transfer of chimpanzees is by no means "traditional" legal practice, Mr. Goodman's attendance was nonetheless necessary to ensure that the chimpanzees were transferred or to deftly respond to Haddix's ongoing contempt. At least one other court has awarded PETA costs and fees related to counsel's presence at a rescue. *PETA v. Tri-State Zoological Park of W. Maryland*, No. 1:17-CV-02148-PX, 2022 WL 622312 (D. Md. Mar. 2, 2022). I will do so as well.

Less certain is whether the 6.5 hours Mr. Goodman billed while travelling from Haddix's property to Save the Chimps on June 5, 2022, were reasonable. At that point, the threat of Haddix's interference was all but extinguished. I also note that Mr. Goodman did not bill for any travel to the Center for Great Apes when the six chimpanzees were transferred on July 28, 2021. Nevertheless, I will decline to exclude these hours. Unlike the July 28 transfer, Plaintiffs had to locate a suitable

- 8 -

sanctuary for Tonka and coordinate the transfer with the Court, United States

Marshals, veterinary staff, and Save the Chimps, all over the course of five days.

Thus, it was reasonable for Mr. Goodman to personally travel to Save the Chimps

to ensure that Tonka could be properly cared for there. This travel was

necessitated by Haddix's contempt: if Haddix had not concealed Tonka, he could

have been transferred to the Center for Great Apes without Mr. Goodman's

oversight. I will accordingly decline to exclude these hours as well.

I therefore conclude that Plaintiffs' counsel reasonably expended 359.5

hours to compel Haddix's compliance with the Consent Decree and to bring their

civil contempt motions. Each of these hours was necessitated by Haddix's blatant

recalcitrance, chicanery, perjury, and contempt of court.

*2. Reasonable Rates*

As to counsels' rates for these hours, the billing records indicate that Mr.

Martin charged between $535 and $680 an hour for his 85.6 hours of legal work.

Even though Mr. Martin's fee increased to $595 an hour in August 2021, and again

to $680 an hour in June 2022, Plaintiffs only request an award reflecting a $535

rate. The records further indicate Mr. Cohen charged $540 an hour for his 3.9

hours of legal work. And although Mr. Goodman is an employee of PETA and

therefore did not charge PETA an hourly rate for his 270 hours of legal work,

- 9 -

Plaintiffs request a rate commensurate with the St. Louis market and Mr.

Goodman's experience: $475 an hour.

Haddix does not challenge the reasonability of these rates, and I find that

they are commensurate with Plaintiffs' counsels' experience and the legal services

they provided. *See Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("When

determining reasonable hourly rates, district courts may rely on their own

experience and knowledge of prevailing market rates."). I will, however, reduce

Mr. Martin's and Mr. Cohen's rates because their billing records indicate that they

provided a ten percent professional services discount to PETA. *See, e.g., Lawn*

*Managers, Inc. v. Progressive Lawn Managers, Inc.*, No. 4:16 CV 144 DDN, 2018

WL 4184343, at *2-3 (E.D. Mo. Aug. 31, 2018) (noting that counsel provided a

courtesy discount to client and declining to increase the award beyond amount

actually charged). I will therefore reduce Mr. Cohen's rate from $540 to $486.

And I will reduce Mr. Martin's rate from $535 to $527.99—the rate at which Mr.

Martin actually billed Plaintiffs:

| | Hours | Rate with Discount | Fee |
|---|---|---|---|
| January 2021 – July 2021 | 28.9 compensable hours | $535 x .9 = $481.5 | $ 13,915.35 |
| August 2021 – May 2022 | 44.7 compensable hours | $595 x .9 = $535.5 | $ 23,936.85 |
| June 2022 | 12 compensable hours | $680 x .9 = $612 | $ 7,344.00 |

- 10 -

| | | | |
|---|---|---|---|
| **TOTAL** | 85.6 compensable hours | $527.99 | $ 45,196.20 |

Accordingly, the lodestar sum for Plaintiffs' attorneys' fees is $175,341.34. The Court's calculations are broken down below. Haddix provides no reason to depart from this sum. I will therefore order Haddix to pay PETA $175,341.34 in attorneys' fees.

### Motion for Attorneys' Fees and Costs (ECF 365)

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Jared Goodman | 232.2 | $ 475.00 | $110,295.00 |
| James P. Martin | 73.1 | $ 527.99 | $ 38,596.07 |
| Ben L. Cohen | 3.9 | $ 486.00 | $ 1,895.40 |
| **TOTAL** | **309.2** | **$ 487.67** | **$150,786.47** |

### Supplemental Motion for Attorneys' Fees and Costs (ECF 379)

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Jared Goodman | 37.8 | $ 475.00 | $ 17,955.00 |
| James P. Martin | 12.5 | $ 527.99 | $ 6.599.88 |
| Ben L. Cohen | -- | -- | -- |
| **TOTAL** | **50.3** | **$ 488.17** | **$ 24,555.88** |

**Totals**

| Attorney | Hours | Rate | Fee |
|---|---|---|---|
| Jared Goodman | 270 | $ 475.00 | $128,250.00 |
| James P. Martin | 85.6 | $ 527.99 | $ 45,195.95 |
| Ben L. Cohen | 3.9 | $ 486.00 | $  1,895.40 |
| **TOTAL** | **359.5** | **$ 487.74** | **$175,341.34** |

## B. Expenses

Plaintiffs also seek to recover their out-of-pocket expenses.  In their first motion, they request $8,341.53 for the following general categories of expenses:

| | |
|---|---|
| Legal Research | $  1,157.13 |
| Meals | $     141.11 |
| Postage Fees | $      16.20 |
| Transcript Fees | $     340.60 |
| Air Travel | $  1,593.42 |
| Local Transportation | $     465.47 |
| Hotels | $     701.40 |
| Expert Witness Fees | $  3,924.20 |

(ECF 366-4.)  In their second motion, they request an additional $40,721.37 for:

| | |
|---|---|
| Legal Research | $      26.91 |
| Meals | $     239.98 |

- 12 -

| | |
|---|---|
| Transcript Fees | $ 620.80 |
| Air Travel | $ 2,450.51 |
| Local Transportation[6] | $ 433.80 |
| Hotels | $ 813.45 |
| Other | $ 36,135.92 |

(ECF 379-4.)

Haddix challenges three general categories of these expenses. First, she

argues that Plaintiffs' expert witness fees are not reasonable expenses because they

were unnecessary and these experts' testimony was never elicited. Second, Haddix

argues that she should not have to pay for costs incurred after June 6, 2022,

because she became compliant with the Court's order on that date. In particular,

she objects to the largest category of these expenses, the costs associated with

Tonka's transfer to Save the Chimps and his care there. Third, she argues that she

should not have to pay for Plaintiffs' travel expenses for the same reason she

claims she should not have to pay for Mr. Goodman's travel time: they are not

connected to the practice of law.

Haddix's first argument is slightly bewildering. Haddix claims that

Plaintiffs unnecessarily retained experts to disprove her assertion that Tonka was

---

[6] As far as I can tell, Plaintiffs miscalculate their costs for local transportation. The sum of the expenses listed in the Local Transportation category in the Summary of Expenses Supplement is $626.16, not $433.80. (*See* ECF 379-4.)

- 13 -

cremated at 165-170 degrees, and claims that these experts never testified before the Court.  But Plaintiffs' experts did testify at the hearing on Plaintiffs' fourth motion for civil contempt—Haddix even cross-examined them.  (*See* ECF 376 at pp. 82-86, 106-109.)

Haddix's second claim is less bewildering but still unavailing.  Although she no longer had custody of Tonka by June 6, 2022, her noncompliance required Plaintiffs to incur losses after that date.  Compensation for these losses is well-within the Court's civil contempt power.  *See Hartman*, 844 F.2d at 1106.  Haddix cites no authority for her contention that losses caused by a contemnor cannot be compensated if they were incurred after the contemptuous conduct.  Nor does she offer any persuasive reason for the Court to make this distinction.

Her specific challenge to the costs of Tonka's transfer and care at Save the Chimps also fails.  She reasons she should not have to pay these costs because (1) the Consent Decree required Plaintiffs to transfer Tonka to the Center for Great Apes, a facility which would not charge for Tonka's care, and (2) the Consent Decree required Plaintiffs to bear the costs of any transfer.  But Plaintiffs' inability to send Tonka to the Center for Great Apes is precisely why Haddix must compensate Plaintiffs for these costs.  As explained above, the Center for Great Apes no longer had the capacity to accept Tonka by the time he was discovered in Haddix's basement.  Plaintiffs had to send Tonka to another facility, and Save the

Chimps was the only available facility that could accept Tonka at that time. Thus, Plaintiffs would not have incurred costs for Tonka's care had Haddix complied with the Court's orders.

Finally, Haddix's challenge to Plaintiffs' travel expenses fails for the same reason as her challenge to Mr. Goodman's fees for travel time: Mr. Goodman's oversight at the transfers and at Save the Chimps was necessary to effectuate the Court's orders. Again, Plaintiffs would not have incurred these expenses had Haddix complied with the Consent Decree.

I will therefore decline to exclude any of the expenses challenged by Haddix. Haddix must compensate PETA for its $49,062.90 in expenses and $175,341.34 in attorneys' fees, for a total of $224,404.24.

|  | Attorneys' Fees | Expenses | TOTAL |
|---|---|---|---|
| (ECF 365) | $ 150,786.47 | $ 8,341.53 | $ 159,128.00 |
| (ECF 379) | $ 24,555.88 | $ 40,721.37 | $ 65,277.25 |
| TOTAL | $ 175,341.34 | $ 49,062.90 | $ 224,404.24 |

Accordingly,

**IT IS HEREBY ORDERED** that Counterclaim Plaintiffs Angela Scott and PETA's "Motion for Attorneys' Fees and Costs Incurred to Obtain Compliance with the Consent Decree" [365] and "Motion to Supplement Motion for Attorneys'

Fees and Costs Incurred to Obtain Compliance with the Consent Decree" [379] are

**GRANTED.**

     **IT IS FURTHER ORDERED** that Haddix must pay PETA $49,062.90 in

expenses and $175,341.34 in attorneys' fees within 7 days of the entry of this

order.  If Haddix cannot pay all costs and fees within that time, she must post a

bond for the full amount of the award within 7 days of the entry of this Order and

pay the full amount of the award within 30 days of the Order.

 

 

                                  _CATHERINE D. PERRY_

                                  CATHERINE D. PERRY
                                  UNITED STATES DISTRICT JUDGE

Dated this 27th day of March 2023.